UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                       :

CLAUDIA MARIE LEE,                  :

                                  :              12 Civ. 6543 (PAE)

                          Plaintiff,      :

                                  :          OPINION & ORDER

               -v-                    :

                                  :

E*TRADE FINANCIAL CORP., E*TRADE     :
FINANCIAL, BANK OF AMERICA CORP., MATTHEW :
J. AUDETTE, JEFFREY J. WALDMAN, and BRUCE R.  :
THOMPSON,                            :

                                  :

                        Defendants.    :

                                  :
------------------------------------------------------------------------X

**PAUL A. ENGELMAYER, District Judge:**

       Plaintiff Claudia Marie Lee ("Lee"), proceeding *pro se*, brings this action against

E*Trade Financial Corporation ("E*Trade"), Bank of America Corporation ("BoA"), Matthew J.

Audette ("Audette"), Jeffrey J. Waldman ("Waldman"), and Bruce R. Thompson ("Thompson")

(collectively, "defendants"), alleging that defendants defrauded her in connection with the

mortgage that they issued, or caused to be issued, to Lee to finance her purchase of a

condominium in Egg Harbor Township, New Jersey.  Defendants move to dismiss Lee's Second

Amended Complaint on various grounds.  For the reasons that follow, defendants' motions to

dismiss are granted.

## I.       Background

### A.       The Parties[1]

Lee is a resident of New York City, New York.  Defendant Matthew J. Audette is the

Chief Financial Officer of defendant E*Trade Financial Corporation.[2]  Second Amended

Complaint 2.  Defendant Bruce R. Thompson is the Chief Financial Officer of Bank of America

Corporation.[3]  *Id.* at 3.  Defendant Jeffrey J. Waldman is an attorney retained by Lee to represent

her in connection with her purchase of the mortgage at issue.  *Id.*

---

[1] In her original Complaint and the First Amended Complaint, Lee named several other
defendants who are not named in the Second Amended Complaint, including:  Dora Jover; Lisa
Gentle; and Frank J. Petrilli, all employees of E*Trade; Brian Moynihan, Chief Executive
Officer and President of Bank of America; and two John Does, employees of, respectively, Bank
of America and the Federal Home Loan Mortgage Corporation.  *See* Complaint ¶ I; First
Amended Complaint ¶ I.  At the initial pretrial conference in the case, however, Lee stated that
Moynihan was no longer a defendant, because he was not named in the Second Amended
Complaint and, as to that issue at least, "the second amended complaint states exactly what [Lee]
want[s] to say."  *See* Transcript of December 13, 2012 Conference 17–18.  Therefore, although
Lee's Second Amended Complaint "incorporates the entire contents of her previously amended
complaints," Second Amended Complaint 1, the Court assumes, based on Lee's statements at the
conference, that the defendants not named in the Second Amended Complaint are no longer in
the case.  Those defendants, moreover, were not served with the Second Amended Complaint.
In any event, the analysis herein applies equally to those additional defendants; as such, Lee's
claims against them, too, would have to be dismissed for the reasons stated herein.

[2] The Court refers to Audette and E*Trade collectively in this Opinion as "the E*Trade
defendants."

[3] The Court refers to Thompson and BoA collectively in this Opinion as "the BoA defendants."

**B.     Facts**[4]

In 2006, Lee purchased a condominium located at 18 Heather Croft in Egg Harbor

Township, New Jersey, as a second home for her "senior handicapped retired parent" to "live out

the last years of her life."  Complaint ¶ III.C.  Lee alleges that she applied for a 30-year, fixed-

rate mortgage at a rate of 6.25%, requiring a 20% down payment, from E*Trade on E*Trade's

"Mortgage website."  *Id.* ¶ III.C-1.  According to Lee, the terms of that mortgage were modified

twice:  first, when the rate was raised to 6.5%; and second, "around 11 days before Closing [in] a

phone call," in which Lee was told that unless she could make a 30% down payment, she would

"have to have a split mortgage" at the rates of 8.5% and 6.5%.  *Id.*

Lee alleges that she "called and E-mailed [her contact at E*Trade,] Dora Jover several

times before the Closing and [Jover] ignored all [of Lee's] cancelation requests."  *Id.*  Lee alleges

that Jover "capriciously and unilaterally . . . cause[d] THE ONE MORTGAGE to carry an

interest of 8.5%, AND THE SECOND ONE at 6.5%, while detrimentally tagging a monumental

30% down payment which [Lee had] informed her she could not afford."  Second Amended

Complaint ¶ 4 (emphasis in original).  Lee also alleges that Jover failed to disclose the total

monthly payment amounts Lee would owe, "and after two weeks of hesitation she gave [her] 3/4

of the amount; she excluded the taxes which were included in the mortgage monthly payment

and excluded the second mortgage amount that she was planning."  Complaint ¶ III.C-1.

According to Lee, "[a]ll three mortgage employees of E-Trade clearly knew [she] could not

afford 18 Heather Croft with the monthly Net Pay salary [she] earned."  *Id.*  Thus, she alleges,

---

[4] The facts related herein are drawn from Lee's Complaint ("Complaint"), Dkt. 1; First Amended
Complaint, Dkt. 2; and Second Amended Complaint, Dkt. 39.  In reviewing a motion to dismiss
under Rule 12(b)(6), the Court accepts the factual allegations set forth in the complaint as true
and draws all reasonable inferences in favor of the plaintiff.  *See, e.g.*, *Galiano v. Fid. Nat'l Title
Ins. Co.*, 684 F.2d 309, 311 (2d Cir. 2012); *Holmes v. Grubman*, 568 F.2d 329, 335 (2d Cir.
2009); *Chambers v. Time Warner, Inc.*, 282 F.2d 147, 152 (2d Cir. 2002).

she "was financial bait for E-Trade which would either force [her] into foreclosure or scare [her] to spend all [her] retirement funds to pay for this mortgage." *Id.*

Lee also alleges that various documents that she received at the closing—which occurred on August 28, 2006, *see* Complaint ¶ III.B—were inaccurate. Complaint ¶ III.C-1. One, the Uniform Residential Loan Application, "included Dora Jover's changed interest rate, and Dora stating 18 Heather Croft was to be [her] primary residence." *Id.* Additionally, she alleges that Jover "left off [her] real primary residence's monthly Maintenance fees as well as increased the present market value of [her] NY apartment, and . . . did not state [Lee's] actual credit card balances; she made them hundreds less." *Id.* Furthermore, Lee asserts, "[t]he real estate taxes and Heather Croft Condo Association Dues on this form were inaccurate as they were scheduled to increase in 30 days of closing." *Id.*

After the closing, Lee claims that she contacted E*Trade and received no response. *Id.* ¶ III.C-5. Lee was "told by the Century 21 Real Estate rep that [she] had 3 days to cancel the first time home buyer mortgage and [she] exercised that right and no one would respond during that period." *Id.*

Lee's claims against BoA arise out of the transfer of her primary mortgage, which, she alleges, was initially "paid to E-Trade, then Countrywide and then to Bank of America." *Id.* ¶ III.C-8. Lee states that she wrote "four Hardship letters over four years" to BoA and E*Trade Financial and that "neither bank ever responded." *Id.* ¶ III.C-9. She also alleges that once she "could only afford to make a partial mortgage payment," BoA refused such payment; that BoA declined two short-sale offers on her property; and that BoA "refused [a] Deed in Lieu on 12/13/10." *Id.*

4

Lee brings claims under the Real Estate Settlement Procedures Act of 1974 ("RESPA"),
12 U.S.C. §§ 2601 *et seq.*; the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*; and
the Home Mortgage Disclosure Act ("HMDA"), 12 U.S.C. §§ 2801 *et seq.* Lee also brings state
law claims for tortious interference with contracts and prospective economic relations, fraud,
negligent misrepresentation, breach of fiduciary duty, and claims under the New York General
Business Law § 349 and § 350, which, respectively, prohibit deceptive acts and practices and
false advertising in the conduct of business.

According to Lee, her economic injuries include: "loss of excellent credit score"; "major
reduction in credit ability"; "un-payable debt"; and loss of her 401(k), emergency savings, and
retirement investment funds. Lee also alleges physical injuries that include "high level stress,
. . . caus[ing] all kinds of breathing lung problems . . . , heart palpitations . . . , H[igh] B[lood]
P[ressure] bouts, loss of hair, continuous headaches and stress induced eating conditions."
Complaint ¶ IV. Lee seeks $2 million in damages from defendants. Second Amended
Complaint 8.

## II.     Procedural History

On August 25, 2012, Lee filed the original complaint in this action. Dkt. 1. On
September 13, 2012, Lee filed a First Amended Complaint, adding defendants but no new factual
allegations or causes of action. Dkt. 2. On October 30, 2012, the BoA defendants filed a motion
to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).
Dkt. 14. On November 7, 2012, the E*Trade defendants filed a motion to dismiss the First
Amended Complaint pursuant to Rule 12(b)(6). Dkt. 21. On November 13, 2012, in response to
those motions to dismiss and consistent with Federal Rule of Civil Procedure 15(a)(1)(B), this
Court issued an order informing Lee of her opportunity to amend her First Amended Complaint

in response to the motions to dismiss, and advising her that she would not be given any further opportunity to amend the First Amended Complaint to address issues raised in the motions to dismiss.  Dkt. 25.

On December 13, 2012, the Court held an initial pretrial conference.  At that conference, the Court stated it would stay any discovery pending resolution of the motions to dismiss.

Also on December 13, 2012, Lee submitted the Second Amended Complaint.  Dkt. 39.  It added defendants Audette, Waldman, and Thompson to the action.  *See* Second Amended Complaint 2–3.

On January 15, 2013, Waldman filed a motion to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6), Dkt. 49, and supporting papers, including a memorandum of law ("Waldman Br."), Dkt. 52, and the Declaration of Steven Verveniotis ("Verveniotis Decl."), Dkt. 50.  That same day, the BoA defendants filed a motion to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6), Dkt. 51, and supporting papers, including a memorandum of law ("BoA Br."), Dkt. 54, and the Declaration of Scott H. Kaiser ("Kaiser Decl."), Dkt. 53.  Also on January 15, 2013, the E*Trade defendants filed a motion to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6), Dkt. 55, and supporting papers, including a memorandum of law ("E*Trade Br."), Dkt. 57, and the Affirmation of Lisa M. McQuade ("McQuade Decl."), Dkt. 56.

On April 23, 2012, Lee filed memoranda of law in opposition to the E*Trade defendants' motion ("Lee E*Trade Opp. Br."), Dkt. 63; to the BoA defendants' motion ("Lee BoA Opp. Br."), Dkt. 64; and to Waldman's motion ("Lee Waldman Opp. Br."), Dkt. 65.  On May 15, 2013, defendants filed their respective reply memoranda.  Dkt. 67, 69–70.

On May 29, 2013, Lee filed three memoranda "in further support of opposition" to defendants' motions.  Dkt. 71–73.  On June 4, 2013, over defendants' objections to this submission as an unauthorized sur-reply, *see* Dkt. 74–76, the Court issued an order stating that, out of respect for Lee's status as a *pro se* plaintiff, it would consider Lee's sur-replies to the extent they were consistent with the remainder of Lee's moving papers.  Dkt. 77.

On June 7, 2013, Lee submitted a motion to strike defendants' reply briefs and a supporting memorandum of law ("Lee MTS Br."), Dkt. 78.  On June 21, 2013, defendants submitted their opposition to Lee's motion to strike.  Dkt. 80 ("BoA MTS Br."), 81 ("E*Trade MTS Br."), 83 ("Waldman MTS Br.").  The Court informed the parties that it would consider plaintiff's motion to strike in conjunction with the motions to dismiss, *see* Dkt. 79; it does so herein, *see infra* Part IV(D).[5]

## III.    Applicable Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Accordingly, a district court "must accept as true all well-pleaded factual allegations in the complaint, and 'draw[ ] all inferences in the plaintiff's favor.'"  *Brown v. Kay*, 889 F. Supp. 2d 468, 479 (S.D.N.Y. 2012) (quoting *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006)); *see also Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) ("We review the district court's grant of a Rule 12(b)(6) motion to dismiss *de novo*, accepting all factual claims in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor.").  Despite the rule in this Circuit that *pro se* complaints are to be liberally construed and interpreted to raise "the strongest arguments they suggest," *see Triestman*

---

[5] The Court also addresses herein Lee's application for the Court to request *pro bono* counsel, Dkt. 27.  *See infra* Part IV(E).

*v. Fed. Bureau of Prisons,* 470 F.3d 471, 474–75 (2d Cir. 2006), in order to survive a motion to

dismiss, a *pro se* plaintiff must plead enough facts to state a claim to relief that is plausible on its

face. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). A claim will only have "facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).

## IV.    Discussion

### A.    Claims Asserted Against E\*Trade Defendants

#### 1.    Federal Claims

##### a.    RESPA

Lee alleges that the E\*Trade defendants violated RESPA, which requires loan servicers

to "disclose to each person who applies for [a] loan, at the time of application . . . . , whether the

servicing of the loan may be assigned, sold, or transferred to any other person at any time while

the loan is outstanding" and to provide notice to borrowers "in writing of any assignment, sale,

or transfer of the servicing of the loan to any other person." 12 U.S.C. §§ 2605(a)(1) & 2605(b).

Lee states that "[s]ervicing [r]ights may have been violated," presumably because, she alleges,

her loan was transferred "to Countrywide and then to Bank of America" and she was not

"notified two to three months in advance" but instead "18 days after the closing." Complaint

¶ III.C-8.

Lee's claims under RESPA are deficient for two reasons. First, they are barred by the

statute of limitations. Under RESPA, any action for violation of § 2605 must be brought within

three years, and any actions for violations of 12 U.S.C. § 2607 or § 2608 must be brought within

one year.  *See* 12 U.S.C. § 2614.[6]   According to the chronology supplied by Lee, the transfer to which she objects occurred at most one month after the closing on August 28, 2006—slightly under six years before Lee filed the original complaint in this action.  It is no answer to this lapse that Lee is proceeding *pro se*.  Although "[p]ro se plaintiffs might not have the legal ken of attorneys," "the Supreme Court has noted [that] the length of a limitation period for instituting suit in federal court inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones.  Indeed, statutes of limitations are not to be disregarded by courts out of a vague sympathy for particular litigants."  *Springs v. Bd. of Educ.*, No. 10 Civ. 1243 (RJH), 2010 WL 4068712, at *2 (S.D.N.Y. Oct. 14, 2010) (citations omitted).  Because Lee's RESPA claim was made outside the statute of limitations period, it must be dismissed.

Second, Lee's allegations, even when construed liberally, fall far short of plausibly pleading a RESPA violation.  Lee does not allege any cognizable violation of RESPA.  The mortgage loan agreement to which she was party specifically provides:  "The Note . . . can be sold one or more times without prior notice to Borrower. . . . If there is a change of the Loan Servicer, Borrower will be given written notice of the change . . . ."  Kaiser Decl. Ex. 2 ¶ 20.[7] Further, Lee acknowledges that she was notified by both email and letter that her loan "w[ould]

---

[6] Lee does not allege precisely which provisions of RESPA defendants have violated.  These three provisions, however, are the only RESPA provisions that give rise to private causes of action.

[7] The Court considers the mortgage loan agreement on this motion to dismiss as a document on whose "terms and effect" the complaint "relies heavily" and that is therefore "integral" to the complaint.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

be transferred" and to "pay [her] next payment to Countrywide."  Complaint ¶ III.C-8.  Lee does

not identify any concrete way in which the E*Trade defendants violated RESPA.

      Lee's RESPA claims are dismissed with prejudice.

### b.    TILA

      Lee's claims under TILA are also untimely.  The statute of limitations for a claim brought

under TILA is "one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).

The violations that Lee alleges here, however, occurred several years before she filed her original

complaint.  Specifically, Lee claims that her right under TILA to rescind a transaction until

"midnight of the third business day following the consummation of the transaction," 15 U.S.C.

§ 1635, was thwarted by defendants, but the third business day after the transaction was

September 1, 2006.  Thus, any alleged violation of TILA arising out of these events took place

nearly six years before Lee filed suit.  The disclosure violations that Lee alleges are also subject

to TILA's one-year statute of limitations, meaning that Lee missed the deadline for suit by close

to five years.[8]  *See* 15 U.S.C. § 1640(e); *Van Pier v. Long Island Sav. Bank, F.S.B.*, 20 F. Supp.

2d 535, 536–37 (S.D.N.Y. 1998).  Lee's complaint under TILA was brought well outside the

statute of limitations period, and is therefore time-barred.  That claim is also dismissed with

prejudice.

### c.    HMDA

      The Home Mortgage Disclosure Act, 12 U.S.C. §§ 2801 *et seq.*, provides for the

maintenance of records and public disclosure by depository institutions, including materials

relating to mortgage loans.  *See* 12 U.S.C. § 2803.  The HMDA does not give individual

---

[8] To the extent that Lee intends to bring claims under TILA's §§ 1639, 1639(b), or 1639(c) in connection with her mortgage loans, those claims are subject to a three-year statute of limitations—which also had long passed by the time Lee filed suit.  *See* 15 U.S.C. § 1640(e).

plaintiffs a private right of action. *See* 12 C.F.R. § 203.6 (providing for administrative

enforcement of HMDA); *Swartz v. City Mortgage Inc.*, 911 F. Supp. 2d 916, 935 (D. Hawaii

2012) ("[T]he HMDA only provides for administrative enforcement."); *Wellman v. First*

*Franklin Home Loan Servs.*, No. 09 Civ. 1257 JM (NLS), 2009 WL 2423961, at *2 (S.D. Cal.

Aug. 4, 2009); *Swanson v. Citi*, 706 F. Supp. 2d 854, 862–63 (N.D. Ill. 2009), *rev'd on other*

*grounds*, 614 F.3d 400 (7th Cir. 2010).  Lee therefore cannot bring a claim for a violation of

HMDA.  That claim is thus dismissed with prejudice.

### 2.     State Law Claims

Lee also brings state law claims for fraud, negligent misrepresentation, tortious

interference with contracts and prospective economic relations, and breach of fiduciary duty, as

well as claims under the New York General Business Law § 349 and § 350, which, respectively,

prohibit deceptive acts and practices and false advertising in the conduct of business.

In all three iterations of Lee's complaint, she has pled, as the sole basis for federal

jurisdiction over her complaint, federal question jurisdiction, under 28 U.S.C. § 1331.  *See*

Second Amended Complaint 2 ("Jurisdiction is conferred upon this Court pursuant [to] 28

U.S.C. § 1331, and plaintiff further invokes this Court's supplemental jurisdiction pursuant to 28

U.S.C. § 1367(a)."); First Amended Complaint ¶ II.A (selecting the "Federal Question" category

in response to form complaint's question regarding the basis for federal court jurisdiction);

Complaint ¶ II.A (same).  Lee has at no point pled that diversity of citizenship exists between the

parties in this case.  Having dismissed Lee's federal claims, therefore, this Court's only basis for

retaining jurisdiction over Lee's state law claims would be pursuant to its power to exercise

supplemental jurisdiction.

As Lee notes, federal district courts have supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  However, such jurisdiction is discretionary, *see City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997), and a district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Both the Second Circuit and the Supreme Court have held that, as a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well.'"  *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (discussing § 1367's predecessor doctrine of pendent jurisdiction)).  Although the exercise of supplemental jurisdiction is discretionary, the ordinary case "will point toward declining jurisdiction over the remaining state-law claims."  *In re Merrill Lynch*, 154 F.3d at 61 (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Here, there is no basis for the Court to exercise its supplemental jurisdiction.  Lee's state law causes of action are not in any way analogous to her federal claims, so there is no argument that this Court "has already invested the judicial resources to resolve" her claims in a way that would "advance the interests of judicial economy, convenience, or fairness."  *Mendez-Nouel v. Gucci*, No. 10 Civ. 3388 (PAE), 2012 WL 5451189, at *17 (S.D.N.Y. Nov. 8, 2012).  The tort claims and New York statutory claims which Lee brings are more appropriately resolved by the relevant state courts which are, no doubt, eminently more familiar with these causes of action.[9]

---

[9] This is particularly true in light of the fact that both the E*Trade defendants and Waldman argue that New Jersey law, rather than New York law, governs the mortgage transactions upon which Lee's claims are based.  *See* E*Trade Br. 7; Waldman Br. 10.  The Court agrees that,

Lee's state law claims against the E*Trade defendants are therefore dismissed without prejudice to her re-filing such claims in state court.

**B.     Claims Asserted Against BoA Defendants**

To the extent that Lee brings claims against the BoA defendants under TILA and RESPA, they are time-barred, for the same reasons as those against the E*Trade defendants. *See supra* Part IV(A)(1)(a)–IV(A)(1)(b). The Court therefore dismisses those claims with prejudice. Her claims under HMDA are likewise dismissed with prejudice against the BoA defendants, as HMDA does not provide a private right of action. *See supra* Part IV(A)(1)(c). To the extent that Lee raises state law claims against the BoA defendants, the Court declines to exercise supplemental jurisdiction over those claims, for the reasons stated above. *See supra* Part IV(A)(2). Those claims are therefore dismissed without prejudice.

**C.     Claims Asserted Against Jeffrey Waldman**

Lee alleges that Waldman "attended the Closing, saw these two mortgages but did not inform [her] of anything such as to the fact this mortgage contained no HUD pages[;] he never explained what the Waiver of Hud-1 meant and [she] did not know to ask." Complaint ¶ III.C-2. She also states:

> I asked . . . Waldman . . . what was that unknown large figure repeatedly being stat[ed] in the mortgage documents and he gave me an answer that told me, "That was the amount I had to pay today" (August 28, 2006) along with thousands of other amounts that were being paid to several other entities. I clearly told him, "That's not the amount I was told I would be paying each month."

---

under the choice-of-law analysis applied by New York courts, the substantive law of New Jersey, where nearly all the events that gave rise to Lee's claims took place and where the property at issue is located, governs here. Lee's claims, therefore, would more appropriately be brought as analogous tort claims under New Jersey state law. As to the New York General Business Law claims, which only apply to transactions that occurred in New York, *see Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 (2002), the Court regards the corresponding analogue to be New Jersey's Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 *et seq.*

Complaint ¶ III.C-4.  Finally, in the Second Amended Complaint, Lee states that Waldman "is in possession of first hand knowledge with respect to [her] objections to the anomalous nature of the terms and conditions of the alleged loan/loans in question herein."  Second Amended Complaint 2.

The Court construes Lee's allegations against Waldman as primarily a state-law claim for legal malpractice.  The Court declines to exercise supplemental jurisdiction over this claim, too, for the reasons stated in Part IV(A)(2) *supra*.  Lee's claims against defendant Waldman are therefore dismissed without prejudice.[10]

### D.    Motion to Strike

On June 7, 2013, Lee moved to strike defendants' reply memoranda.  *See* Dkt. 78.  Lee argues that the defendants' memoranda "constitute[] false, redundant, and immaterial allegations."  Lee MTS Br. 2–6.

---

[10] The Court does note, however, that Lee's claims against Waldman are likely barred by the statute of limitations—whether measured under New York law or New Jersey law.  The statute of limitations for legal malpractice under New Jersey law is six years.  *See* N.J. Stat. Ann. § 2A:14–1; *McGrogan v. Till*, 167 N.J. 414, 419–20, 426 (2001) ("[T]h[e] limitations period for all legal malpractice actions is the six-year statute of limitations contained in N.J.S.A. 2A:14– 1.").  In New York, the statute of limitations for legal malpractice is three years.  *See* N.Y. C.P.L.R. § 214; *Nobile v. Schwartz*, 56 F. App'x 525, 526 (2d Cir. 2003) (summary order); *MIG, Inc. v. Paul, Weiss, Rifkind, Wharton & Garrison, L.L.P.*, 701 F. Supp. 2d 518, 524 (S.D.N.Y. 2010), *affirmed by summary order*, 410 F. App'x 408 (2d Cir. 2011).  Under either state's law, Lee's claim against Waldman, whom she first added as a defendant to this action in her December 13, 2012 Second Amended Complaint, would be time-barred.  As noted, Lee admits to being aware, at the time of closing on August 28, 2006, that the documents required her to pay more than she had been previously told.  Complaint ¶ III.C-4.  She further states that she contacted E*Trade about flaws in the documents, and in order to cancel the mortgage, two days after the closing.  *Id.* ¶ III.C-4.  And Lee does not allege that Waldman continued to represent her after the day of the closing, foreclosing any claim that the statute of limitations should be tolled due to "continuous representation" of Lee by Waldman.  *See Shumsky v. Eisenstein*, 96 N.Y.2d 365 (2001).  The statute of limitations for Lee's claims against Waldman thus began to run, at the latest, on August 30, 2006—six years and three-and-one-half months before Lee brought any claims against Waldman.  Under either state's statute of limitations, Lee's claims against Waldman are likely time-barred.

Rule 12(f) allows the Court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 12(f) motions are, however, highly disfavored. *See* 5 Charles A. Wright et al., *Federal Practice and Procedure* § 1382 (2d ed. 1990). A Rule 12(f) motion brought on the grounds of "impertinent" or "immaterial" matter should be denied "unless it can be shown that no evidence in support of the allegation would be admissible." *See Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976); *Iconix Brand Grp., Inc. v. Bongo Apparel, Inc.*, No. 06 Civ. 8195 (DLC), 2008 WL 2695090, at *7 (S.D.N.Y. July 8, 2008).

It is not clear on what grounds Lee moves to strike the reply briefs. Lee's brief in support of that motion rather provides additional detail and allegations in support of her claims, and serves effectively as her own reply to the defendants' reply memoranda. It is also not clear that Rule 12(f) properly applies to reply briefs, as it provides only for striking material from a "pleading."[11] In any event, the Court's review of the briefs reveals that there is nothing whatsoever improper about them. They provide relevant arguments responsive to Lee's claims and her opposition brief. *See Briese Lichttechnik Vertriebs GmbH v. Langton*, No. 09 Civ. 9790 (LTS)(MHD), 2012 WL 5457681, at *6–7 (S.D.N.Y. Nov. 8, 2012) (denying motion to strike portions of a reply brief and stating that "reply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party" (citation omitted)). In essence, Lee disagrees with the statements made by defendants in their reply briefs. Such disagreement, however, does not provide a ground for striking those briefs from the record.

---

[11] The term "pleading," in turn, comprises: "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and, (7) if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a).

The Court therefore denies Lee's motions to strike defendants' reply briefs from the record.

### E.      Application for Pro Bono Counsel

Finally, Lee has also made a request that the Court appoint *pro bono* counsel.  *See* Dkt. 27.  In order to qualify for appointment of *pro bono* counsel, a plaintiff must first demonstrate that her claim has substance or a likelihood of success.  *See Johnston v. Maha*, 606 F.3d 39, 41 (2d Cir. 2010); *Hodge v. Police Officers*, 802 F.2d 58, 60–61 (2d Cir. 1986).  If an applicant meets this threshold standard, the Court must then consider, "[t]he merits of plaintiff's case, the plaintiff's ability to pay for private counsel, h[er] efforts to obtain a lawyer, the availability of counsel, and the plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel."  *Johnston*, 606 F.3d at 42; *see also Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989) (per curiam).  The Court must also remain mindful throughout the inquiry that volunteer attorney time is a precious commodity, and courts should therefore not grant the appointment of counsel indiscriminately.  *Cooper*, 877 F.2d at 172.

For the reasons stated above, Lee has not demonstrated that her federal claims are likely to succeed.  No attorney appointed by the Court after Lee filed her initial complaint could cure the time-bar to Lee's RESPA and TILA claims, or the unavailability of a private right of action under the HMDA.  And although she represents that she has gone to great efforts to retain counsel, stating that she has contacted "over 30 attorneys in N[ew] Y[ork] and N[ew] J[ersey]," Lee has also demonstrated an "ability to gather the facts and deal with the issues if unassisted by counsel."  Each of Lee's submissions to the Court has been timely and meticulously compiled, with great attention to detail and a demonstrated attempt to comply with this Court's rules.  Lee's

*pro se* status, in other words, does not appear to have thwarted her ability to prosecute her federal claims, or this Court's ability to assess the merits of those claims.

Lee's application for *pro bono* counsel is therefore denied.

## CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss Lee's RESPA, TILA, and HMDA claims are granted with prejudice. Their motions to dismiss Lee's remaining claims are granted without prejudice. Lee's motion to strike and her motion for the Court to appoint *pro bono* counsel are denied.

The Clerk of Court is directed to terminate the motions pending at docket numbers 27, 49, 51, 55, and 78, and to close this case.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: August 6, 2013
        New York, New York